IVA A. BALTZLY, APPELLEE, V. GERTRUDE GRUENIG, APPELLANT.

FILED JULY 6, 1934. No. 28983.

*Fischer, Fischer & Fischer* and *Brome & Thomas,* for appellant.

*Rosewater, Mecham, Burton, Hasselquist & Chew,* contra.

Heard before ROSE, GOOD, EBERLY and PAINE, JJ., and LESLIE and RYAN, District Judges.

PAINE, J.

Iva A. Baltzly, appellee, hereafter called the plaintiff, brought action against Gertrude Gruenig, appellant, hereafter called the defendant, for damages for the alienation of the affections of plaintiff's former husband, Dr. Oliver D. Baltzly. The jury returned a verdict for $12,500. Defendant appeals from judgment entered on said verdict.

The plaintiff, in the concluding paragraph of her petition, set out: "That as a direct cause and result of the defendant's acts as herein set forth, she completely alienated plaintiff's husband's affections from the plaintiff and by reason thereof plaintiff has lost the society, assistance, support and consortium rightfully owing to her from her husband, by reason whereof she has been damaged in the sum of $50,000."

The defendant in her answer "specifically denies that at any time or in any place or in any manner did she alienate the affections of the said Oliver D. Baltzly from the plaintiff herein, but alleges that the want of love, esteem and affection by the said Dr. Oliver D. Baltzly for the plaintiff herein as alleged in her petition, if true, must have been caused by acts and conditions in no wise connected with the defendant, and defendant further alleges that through no act of the defendant has the plaintiff lost the society, assistance, support and consortium of the said Dr. Oliver D. Baltzly."

The evidence discloses that the plaintiff was 60 years of age in November, 1933, and was born at Galion, Ohio. Dr. Baltzly was born on a farm near Ponca, Nebraska, about 1872, and in 1889 they met in the freshman year of their college course, and each received an A. B. degree from Wittenberg College at Springfield, Ohio, in 1893. After that they each received a master's degree, and later each attained the degree of doctor of philosophy, which shows that both are highly educated. They were married June 11, 1896. The issue of said marriage is one daughter, Olive, named for her father, born at Mansfield, Ohio, September 29, 1897, while Dr. Baltzly was pastor of St. Luke's

Lutheran Church. After preaching at points in the east for several years, Dr. Baltzly became the pastor of the Kountze Memorial Church at Omaha in 1911, it having at that time a membership of 750, and he was retained as pastor and advanced in salary, until 20 years later the church had a membership of about 4,500, and they were paying him $6,000 a year, and he had gained national repute as an author of Lutheran publications. He was made pastor emeritus in August, 1931.

In 1916 the plaintiff received the highest honor and greatest responsibility in the power of the Lutheran church to bestow upon a woman. She was placed at the head of the Women's Home and Foreign Missionary Society of the general synod, an organization of 50,000 Lutheran women, supporting a vast amount of missionary activities in America, India, and Africa. At all times the plaintiff claims that she did all in her power to make the work of her husband's church successful.

The daughter, Olive, became a teacher in the Benson, and later in the Technical, high schools in Omaha, but suffered a nervous breakdown in 1919, and grew worse, and three years later she was confined for a time in Dr. Bishop's Sanitarium in South Pasadena.

The defendant, aged 39 at the time of the trial, resides at 2514 Fowler Avenue, Omaha. She was married to Dr. F. C. Lage on November 24, 1914, each of them being members of the Kountze Memorial Church. This marriage was annulled in Omaha on July 23, 1926, upon her testimony that they had never at any time lived together as man and wife, and in this annulment decree her maiden name was restored to her.

After retiring from the active pastorate of the church, Dr. Baltzly went to Arkansas, and on October 20, 1931, established a residence in the Hot Springs Tourist Court, an automobile camp just outside the city limits of Hot Springs, to acquire the 90-day residence required for a divorce. He filed a petition for divorce on December 26, 1931, and a decree of divorce against the plaintiff was

granted him on May 3, 1932, which did not provide for any support for the plaintiff or the daughter.

More than 20 of the members of the Kountze Memorial Church testified for the plaintiff at the trial, and the evidence discloses that the membership of the church is divided on the merits of the case, but of those members testifying a greater number supported the plaintiff's charges.

The evidence is very voluminous, and no good end would be served by setting it forth at length in all the minute details found in the several volumes of the bill of exceptions.

The defendant testified that she admired Dr. Baltzly very much, and had always assisted him in every phase of church work where she could. As the years passed she gradually spent more time in the church, often remaining for an hour or more with him in his study, or in the sacristy, a little room off the altar, and on a few occasions they were there behind locked doors. The janitor testifies that they remained there a few times until nearly midnight. Testimony indicates that on at least two occasions they were observed in the act of embracing and kissing, this being denied by both of them. One summer Dr. Baltzly spent a few days, while other guests were there, at the defendant's cottage in Minnesota; this was in 1925. They have taken automobile rides together. They would visit together in the church for hours at a time, appearing confidential in their manner. The defendant's counsel insists that they stood so close together on these occasions because Dr. Baltzly is slightly hard of hearing. The weight of the evidence indicates definitely that, when the defendant and Dr. Baltzly were thus together alone, they were happy, contented, and seemingly infatuated with each other.

The domestic relations between the plaintiff and her husband grew more strained as the years went on, and finally on May 23, 1927, an agreement, being exhibit 1, was entered into in the presence of five witnesses, and

received in evidence without objection, which began with these words: "Whereas certain differences have arisen between the undersigned threatening a separation and perhaps a state of facts of more serious consequences." Plaintiff claims she signed it under pressure. The plaintiff, by the terms of said agreement, departed from Omaha on June 15, 1927, taking the daughter, Olive, with her, and established a temporary home in California, and Dr. Baltzly agreed to pay railroad fare of $150, and, in addition, pay $175 a month for the care of plaintiff and their daughter. Plaintiff went to California, and has remained there, and the daughter was at the time of the trial greatly improved in health. Payments under exhibit 1 were made until August, 1931, when he ceased such payments.

Dr. Baltzly, at the trial in the case at bar, testified for the defendant, and strongly against his former wife. He claimed that for years his wife had a very jealous attitude towards the women generally of the congregation, and charged him with having more than a pastor's regard for the women of his church, even before he came to Omaha, where her jealousy greatly increased, and hampered his work. He testified that before 1919 he had determined to secure a divorce from her because of her attitude towards him, but that he did not push the matter then because of his daughter's mental breakdown. He claims that all marital relations between them ceased in 1925. The plaintiff went to the church council in 1926 and asked it to investigate the conduct of her husband with the women members of the church generally, and with the defendant in particular. The church council heard each in the absence of the other; then appointed a committee of five men to investigate, and the committee did not find her accusations sustained. Defendant's counsel says that, from that time on, a small group comparatively, out of a church membership of 4,500, sided with the plaintiff, and there was an open feud between the friends of each; that this small group siding with his wife was joined by some of the ministers of the denomination who were envious of

Dr. Baltzly. He attributes all of their difficulties to his wife's nagging, jealous disposition.

The plaintiff in the instant case testified by deposition in the divorce case brought against her in Arkansas. One of her answers therein was to the following effect, as brought out in this trial: "Instead of being jealous of his success in the church I was eager to help that success. Instead of being jealous of the women members of the congregation, he was as free as air for all contacts necessary in the work of the church. No one realized better than I that he must meet with the women of the church in connection with the church work. * * * The only cases in which I was jealous was in those cases where there was cause to be jealous and cases in which any woman with red blood in her veins would naturally be jealous."

In considering a case of this kind, the law of Nebraska was very well set out by the trial court in instruction No. 5, which reads as follows: "Marriage is regarded by the law as a civil contract, but the preservation of the harmonious relations, when existent between the parties to such contract, is considered of the highest importance; therefore it is the policy of the state to protect the parties to such contract from the wrongful intrusion or interference of others, and to maintain such peaceful and harmonious relations; and if any person intentionally interferes with or disturbs the relation between husband and wife, with the result that the affections, comfort, aid, or society and companionship which the husband ought to have for and bestow upon his wife are withdrawn or alienated from her, the party so offending is liable to the wife in damages."

Twelve propositions of law are set out in defendant's brief as grounds for the reversal of this judgment. It is insisted by defendant that loss of support is not a proper basis of recovery, because the right of support is vested in the wife by law, and cannot be destroyed by the acts of the defendant. We have carefully read the motion for new trial as filed in this case, and the only statement relating

thereto is: "D. There is no evidence that plaintiff has lost the support of her husband."

The trial judge mentioned support in instruction No. 11, and the objections by defendant to that instruction are to several specific points in it, and not to this point. We do not believe that question is before us. *Dunbier v. Mengedoht,* 119 Neb. 706; *Lukehart v. State,* 91 Neb. 219; *Von Dorn v. Rubin,* 104 Neb. 465.

It is insisted by the defendant that, in an action for alienation of affections, evidence tending to show that the defendant was a person of wealth, or the owner of an interest in property, is inadmissible in the absence of competent affirmative evidence tending to show that the defendant used her financial status as an intended active enticement.

In examining the bill of exceptions, it appears that Harry Fischer, the defendant's own attorney, testified that the Gruenig estate, of which defendant is one of the heirs, had a conservative value of $250,000. Evidence as to other holdings of defendant was either testified to by defendant's own witnesses, or was put in the record without any objections being made.

The testimony tended to show that Dr. Baltzly was attracted by finances and property, and that the defendant consulted with him over the handling of her business matters for hours; sometimes in his study, or in the sacristy of the church. As a general rule, testimony as to the financial condition of the defendant has no place in such a controversy, and should not be admitted in evidence. If, however, one who is accused of alienating a husband's affections held out to him her need of his assistance in handling her property, and continually consulted with him, and he was highly flattered and attracted thereby, and enjoyed sharing in such responsibilities, and if this was one of the blandishments by which defendant induced him to desert his wife, it might be material.

The trial court rightly instructed the jury on this question, as follows: "You are instructed that in the event of

your finding in favor of the plaintiff, then in the matter of assessing damages, if any, which you may find from the evidence the plaintiff has sustained, you should not take into consideration any testimony offered and received showing the amount of the wealth of the defendant. Testimony concerning the wealth of the defendant was offered and received only as affecting the mind of Oliver D. Baltzly and as tending to influence him in his action, if you find he was influenced, toward the plaintiff and defendant, and for no other purpose, and beyond considering such testimony for that purpose, such testimony must not be considered by you." See 13 R. C. L. 1479, sec. 528; *Hurley v. Manchester*, 107 Neb. 299; *Robinson v. City of Omaha*, 84 Neb. 642.

The defendant insists that the statute of limitations has run in this case; that the petition was filed more than four years after all affection was destroyed, and consortium lost or impaired; and cites us to *Von Dorn v. Rubin*, 104 Neb. 465, in which Judge Redick sustained a demurrer to the petition, which was affirmed by this court. In that case the alienation was complete in 1911, and suit was brought in 1918.

In the case at bar, exhibit 1, being an agreement between the parties, was for the purpose of effecting a reconciliation, and payments thereunder continued until August, 1931, and in May, 1932, Dr. Baltzly secured his divorce in Arkansas.

It was held in *Dey v. Dey*, 94 N. J. Law, 342: "If husband and wife be living separate, there is always a possibility of their coming together which the law encourages, and an actionable wrong is committed by unlawful interference preventing reunition."

There is no doubt that the conduct which plaintiff complains of covered a period of much more than four years, but under a signed agreement and contemplated reconciliation payments were made until August, 1931, at which time all bonds were severed between the husband and wife. Petition in this action was filed October 19, 1932,

and the jury were properly instructed: "That within four years prior to the 19th day of October, 1932, plaintiff was possessed of the affections of her said husband, Oliver D. Baltzly, or was the recipient of his support, comfort, companionship and consortium, in some degree or measure; * * * that plaintiff was thereafter deprived of the affections, support, comfort, companionship and consortium of her husband." In our opinion, and by the verdict of the jury, the statute of limitations had not run at the time the petition was filed in the case at bar.

It is insisted by defendant that the verdict must have been reached from passion or prejudice, or through some influence outside of the evidence; also, that where the verdict is against the clear weight of the evidence, so that it cannot be sustained on any principle of right or justice, it is the duty of the court to set it aside.

In this class of cases, the motives actuating the different parties become a material subject of proof, and a wide latitude is exercised by the court in admitting evidence for such purpose, which ordinarily might be subject to the objection against hearsay evidence and self-serving declarations. For this reason, the declaration of a deserting husband, showing his mental state at the time, is admissible on behalf of the defendant, and his testimony, being so strongly for the defense, was doubtless weighed carefully by the jury.

The depth of the affection of the husband whose affections are alienated is not material as affecting the wife's right to bring the action, for a want of affection on the part of the deserting husband is not a defense in bar to the maintenance of the action, but simply goes to mitigate the damages.

Courts will seldom interfere with the finding of the jury in such actions, for the reason that there is no method of determining exactly the proper pecuniary compensation which should be awarded. *Phillips v. Thomas,* 70 Wash. 533, 42 L. R. A. n. s. 582; *Ruhs v. Ruhs,* 105 Neb. 663; *Sickler v. Mannix,* 68 Neb. 21; *Potter v. Howser,* 104 Neb.

367; *Sonneman v. Atkinson,* 121 Neb. 752; *Wendt v. Wendt,* 106 Neb. 554; *Rath v. Rath,* 2 Neb. (Unof.) 600; *Butterworth v. Butterworth,* 89 L. J. Prob. n. s. 151, L. R. Prob. (Eng.) 126.

We have examined each of the other assignments of error. We believe the case was fairly tried, and submitted to the jury under proper instructions. No prejudicial error appears in the record, and the judgment is, therefore,

AFFIRMED.