MERTON ARNOLD OLIVER, APPELLEE, v. BOB OLIVER,
APPELLANT.

66 N. W. 2d 420

Filed October 22, 1954. No. 33574.

*Blackledge & Sidner,* for appellant.

*Dryden, Jensen & Dier,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action to recover damages for criminal conversation. Merton Arnold Oliver is the plaintiff and Bob Oliver is the defendant. The case was tried to a jury, resulting in a verdict in favor of the plaintiff. Defendant's motion for judgment notwithstanding the verdict and in the alternative motion for new trial was overruled. The defendant perfected appeal to this court. For convenience the parties will be referred to as originally designated in the district court.

The record shows that the plaintiff and his wife, Blanche Inez Oliver, were married in Yuma, Arizona, on October 15, 1942. They are the parents of four

minor children. The plaintiff and his wife, after their marriage, resided in California, and came to Nebraska in 1947, to enable the plaintiff to help his father in farming operations. They settled in the Shelton community in Buffalo County where the plaintiff was born and raised. The defendant is a resident of the Shelton community. The plaintiff and the defendant are distantly related, being either second or third cousins. Upon the return of the plaintiff to Nebraska, the plaintiff and defendant renewed their boyhood acquaintance. The plaintiff, with his wife and family, lived in a remodeled house 2 miles west and a mile north of Shelton. The defendant lived with his parents approximately a mile west of Shelton. In 1947, the plaintiff and the defendant together bought a corn sheller and a truck, and did some custom corn shelling. The plaintiff did not have a car and the defendant had a 1950 model Buick, and on occasions would take the plaintiff and his wife to social functions. Primarily such functions consisted of dances at various places. The defendant usually paid the expenses of these trips. Apparently the relationship between the plaintiff, his wife, and the defendant was on a friendly basis. In 1949 or 1950, the plaintiff and his family moved to a house a quarter of a mile south of the home of the defendant's father. The defendant made the arrangements for this move. The relations between the plaintiff, his wife, and the defendant were about the same after they moved. On occasions the defendant would visit the plaintiff's home when he was there and also during his absences. Independently of the testimony of the plaintiff's wife, there is evidence to justify the inference that the defendant had deliberately participated in the creation of opportunities to be with her during the absence of her husband.

Approximately a year and a few months after the plaintiff and his family moved, the plaintiff heard some stories and rumors that he did not like, and as a consequence, moved to another place approximately 2½

miles from where the defendant lived. The defendant helped the plaintiff move.

The first that the plaintiff knew there was anything wrong between his wife and the defendant was when his wife told him about the situation near Christmas time in 1951.

The plaintiff's wife testified that on occasions the defendant, using his car, took the plaintiff and her to social functions and would not ordinarily have a date or take a girl friend. In addition, she testified to instances and occurrences during the absence of her husband, and one in his presence, indicating that the defendant was making love to her. Further, she testified that on occasions the defendant endeavored to have her leave the plaintiff, obtain a divorce, and marry the defendant. He said that they would live where she desired to live, and he would raise and support the two minor children of the plaintiff and his wife. There are other instances which need not be enumerated. The specific instance of the alleged sexual relations between the defendant and the plaintiff's wife is in substance as follows: On October 19, 1951, she attended a PTA meeting at the school house in Shelton. The defendant knew that she was going to be there, and after the meeting his car was parked in front of the school house. He implored her to follow him, which she did. They went to a place off the highway owned by the defendant's father, a mile and a half west and south of where the plaintiff and his family lived. There was some talk between the defendant and the plaintiff's wife as to what should be done about the situation, the defendant saying that she would have to do something, that she was driving him crazy and he could not stand it. The defendant started to make love to the plaintiff's wife. She endeavored to resist, but she finally gave in and they had sexual relations. Thereafter she went home. She did not inform her husband of the facts until Christmas Eve 1951. She had requested the defendant to talk to her husband, and finally on

Christmas Eve, according to her testimony, they had a talk with her husband with reference to obtaining a divorce which she desired and which the defendant also desired. The plaintiff stated that she could have a divorce, but that the custody of the children would be determined by the court. The plaintiff's wife then left the premises with her brother who lived in Kearney. Subsequently, she went to California and by correspondence asked the plaintiff to forgive her. He finally agreed to talk the matter over and she returned. A reconciliation between the plaintiff and his wife was effected and she agreed to testify in behalf of the plaintiff in this law suit. The plaintiff had started divorce proceedings December 26, 1951, and on the same day brought this action. After the divorce proceedings were instituted, the defendant, at her request, promised to do the right thing by her and also by the children, but after consulting counsel, he would only talk to her in the presence of witnesses. After one such conversation, she never saw the defendant again. Other facts are adduced in the record which need not be enumerated.

The principal assignments of error for determination in this appeal may be summarized as follows: (1) The trial court erred in giving instruction No. 1 with its references to the allegations and claims as to alienation of affections. (2) The trial court erred in giving instruction No. 3 with its reference to instruction No. 1 which included the allegations regarding alienation of affections and informing the jury that they state briefly the issues which the jury were to consider in this case. (3) The trial court erred in giving instruction No. 9 by instructing the jury to find for the plaintiff if they found that the defendant committed the offense charged in the amended petition, thereby again referring to the allegations of alienation of affections, and again permitting the jury to consider the same.

This action was originally filed to recover damages for alleged alienation of affections and criminal con-

versation. A few weeks after the original petition was filed the plaintiff and his wife became reconciled. The plaintiff then filed an amended petition which we will subsequently refer to. During the trial of the case the plaintiff's attorney informed the court that his theory of the case was that since the reconciliation had been had between the plaintiff and his wife and they were living together, this confined the case to one of criminal conversation.

The amended petition filed by the plaintiff alleged the marriage of the plaintiff; that commencing on the first day of January 1950, and at many and divers intervals thereafter, the defendant wrongfully, willfully, wickedly, maliciously, and unjustly commenced an association with the wife of this plaintiff; that it was the intent and purpose of the defendant to seduce and to carnally know the wife of this plaintiff; and that with that object and purpose in mind the defendant did, on the first day of January 1950, and at numerous and divers intervals of time during the said year 1950, call at the home of the plaintiff and make love to the wife of the plaintiff, protesting that he loved her, wished to marry her and take her from the home of this plaintiff to California or some other state, taking with her the two smaller children of the plaintiff and his wife. The plaintiff further alleged that the defendant, with said purpose in mind, met the plaintiff's wife in Grand Island, Nebraska, went to the hospital in Kearney, Nebraska, to see her in November 1950, after she had had the youngest child of this plaintiff, and constantly sought, pleaded, and asked the wife of this plaintiff to leave this plaintiff and come with him, and that he would marry her and raise and support the two youngest children of this plaintiff and his wife. Then the plaintiff alleged that the defendant unlawfully cohabited, associated, and kept company with and carnally and criminally knew his wife, setting forth the specific act of sexual intercourse between the plaintiff's wife and the defendant on October

19, 1951. This amended petition is also to the effect that the defendant continued to meet the plaintiff's wife, meeting her in Grand Island, and thereafter induced the wife of this plaintiff to leave this plaintiff sometime in the early part of December 1951; that by virtue thereof, and the cohabitation and association of this defendant with this plaintiff's wife and his carnally and criminally knowing her, she still being the wife of this plaintiff, he had destroyed the affection of the said wife of the plaintiff for the plaintiff and had deprived the plaintiff of the comfort, fellowship, services, society, and marital relations and assistance of his wife in domestic affairs; and that the plaintiff's wife left his home, leaving him with four children resulting from said marriage, and left the plaintiff in dishonor and disgrace and caused him great mental anguish and injury to his feelings, to his damage. To this amended petition, the defendant filed a general denial.

We deem it advisable to set out in part instruction No. 1 given by the trial court, to show in what manner it compares with the amended petition. "2. Plaintiff alleges that during the year 1950, commencing on the 1st day of January, 1950, and at many and divers intervals thereafter, the defendant (naming him) wrongfully, willfully, maliciously and unjustly commenced an association with the wife of plaintiff. That it was the intent and purpose of the defendant to seduce and carnally know the wife of this plaintiff, and with said object and purpose in mind the defendant did, on the 1st day of January, 1950, and at numerous and divers intervals of time during said year of 1950 call at the home of this plaintiff and make love to the wife of this plaintiff, protesting that he loved her and wished to marry her and take her from the home of this plaintiff to California or some other state, taking with her the two smaller children of this plaintiff and his wife.

"3. Plaintiff alleges that the defendant with said purpose in mind met this plaintiff's wife in Grand Island,

Nebraska, went to the hospital in Kearney, Nebraska, to see her in November of 1950, after she had had the youngest child of this plaintiff, and constantly sought, pleaded and asked the wife of this plaintiff to leave this plaintiff and come with him, that he would marry her and raise and support the two youngest children of this plaintiff and his wife.

"4. Plaintiff further alleges that with said purpose in mind as above set forth the defendant associated and kept company with and carnally knew the wife of plaintiff, she still being the wife of plaintiff, and that defendant continued to meet plaintiff's wife, and induced her to leave this plaintiff some time in the early part of December, 1951.

"5. Plaintiff alleges that by reason of the foregoing he suffered dishonor and disgrace, great mental anguish and injury to his feelings, all to his damage * * *."

In instruction No. 3, the trial court informed the jury that instructions Nos. 1 and 2, contained the pleadings above mentioned; that the same, in substance, constituted the claims of the parties and were given the jury for the sole and only purpose of advising the jury of the respective contentions of the plaintiff and defendant; and that they must not in any manner be considered as evidence. In other words, that they stated briefly the issues which were to be considered in the case, and in considering the issues the jury must be governed by the evidence in the light of the following rules of law set forth in the instructions. Any and all allegations contained in the pleadings which were not supported by the evidence, the jury would disregard.

In instruction No. 9 defining preponderance of the evidence, the court also informed the jury: "And if the jury believe from a preponderance of the evidence that the defendant committed the offense charged in the amended petition herein * * *."

Before analyzing the effect of the instructions or the parts thereof heretofore set forth to discern whether

or not the trial court in giving such instructions committed prejudicial error, we deem it advisable to point out the difference between an action in alienation of affections and an action in criminal conversation.

"Alienation of affections" and "criminal conversation" are separate and distinct wrongs. See Bean v. McFarland, 280 Mich. 19, 273 N. W. 332.

The term "criminal conversation," in its general and comprehensive sense, is synonymous with "adultery"; but in its more limited and technical signification it may be defined as adultery in the aspect of a tort. See Turner v. Heavrin, 182 Ky. 65, 206 S. W. 23, 4 A. L. R. 562.

"Alienation of affections" is not a necessary element in criminal conversation, wrong done in former being deprivation of spouse of right to aid, comfort, assistance, and society of other spouse in family relationships, while wrong done in "criminal conversation" is violation of spouse's right to exclusive privilege of sexual intercourse. See Hargraves v. Ballou, 47 R. I. 186, 131 A. 643.

There is a distinction between an action for criminal conversation and an action for alienation of affections. It is possible for a cause of action for either to exist without the other. While an action for alienation of affections and one for criminal conversation are both founded on the injury to the right of consortium they are generally recognized as essentially different. See Darnell v. McNichols, 22 Tenn. App. 287, 122 S. W. 2d 808. See, also, 42 C. J. S., Husband and Wife, § 697, p. 352.

The recognized primary issue in the instant case was simply whether or not the defendant had adulterous relations with the plaintiff's wife. In stating the issues of fact in its charge to the jury, the court should submit to the jury only such issues as are presented by the pleadings and are in controversy, and which find some

support in the evidence. See Klinginsmith v. Allen, 155 Neb. 674, 53 N. W. 2d 77.

This court has frequently criticized the practice of copying the pleadings as a method of stating the issues to the jury and where they contain allegations not supported by evidence it may be reversible error to include such allegations in defining the issues if the reviewing court is satisfied that the jury may have been misled thereby. See, Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597; Hutchinson v. Western Bridge & Construction Co., 97 Neb. 439, 150 N. W. 193; McClelland v. Interstate Transit Lines, 139 Neb. 146, 296 N. W. 757.

As stated in McClelland v. Interstate Transit Lines, *supra:* "The stating of the issues by substantially copying the pleadings of the parties, almost verbatim, as was done here, has been repeatedly condemned by this court. If it results in prejudice to the complaining party, it is sufficient ground for reversal. In stating the issue to the jury, it is likewise error, which may be prejudicial, for the trial court to include allegations of which there is no proof."

Considering the instructions given in the instant case in the light of the foregoing authorities and recognizing that the sole and only issue in the instant case was that of criminal conversation as defined herein, we believe that the submission to the jury in the manner and form in which the issues were submitted by the trial court constituted prejudicial error.

There are other assignments of error made by the defendant which are without merit and unnecessary to detail in this appeal.

For the reasons given herein, the judgment entered on the verdict by the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.