LONNIE A. BREINER, APPELLEE AND CROSS-APPELLANT, v.
TED OLSON, APPELLANT AND CROSS-APPELLEE.
237 N. W. 2d 118

Filed December 31, 1975. No. 40111.

Nelson, Harding, Marchetti, Leonard & Tate and Alan L. Plessman, for appellant.

Patrick J. Heaton, Jr., for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

CLINTON, J.

This is an action in two causes, the first for alienation of affections and the second for criminal conversation,

brought by the plaintiff, Lonnie A. Breiner, against the defendant, Ted Olson, to recover damages for interference by Olson with the marriage relationship of the plaintiff and his wife, Sharon Breiner. The trial court directed a verdict of liability against the defendant on the second cause of action submitting only the issue of damages. On the first cause the court submitted the issues of both liability and damages to the jury which found for the defendant. It awarded damages in the amount of $25,000 to the plaintiff on the second cause of action. The defendant filed a motion for new trial on the second cause. The plaintiff filed a motion for a new trial on the first cause. Both motions were overruled. The defendant appealed and the plaintiff cross-appealed.

The defendant makes numerous assignments of error which we consolidate by eliminating redundancies and restate as follows: (1) The court erred in admitting evidence concerning other litigation between the plaintiff and the defendant and in denying the plaintiff's motion for a mistrial because of the admission of such evidence. (2) The court erred in excluding the defendant's offer of the testimony of the Reverend Clarence Stenbeck. (3) Instructions Nos. 6 and 7 given by the trial court were erroneous. (4) The court erred in giving an additional instruction in response to a question by the jury during the course of its deliberations. (5) The jury's award of damages on the second cause is excessive and the result of passion, prejudice, mistake, or disregard of applicable rules of law. (6) The court erred in denying the defendant's motion to reduce the jury verdict to $15,000.

A detailed recital of the evidence would serve no useful purpose and we summarize it as follows, taking note of specific matters in more detail as is necessary in the discussion of each assignment. Breiner and his wife, Sharon, were married in 1962 and became the parents of four children. Breiner engaged in the raising of hogs and chickens on small acreages and did custom haying

as well. Sharon worked with him in these enterprises which, for a variety of reasons, including loss of hogs by disease, did not succeed. Breiner also did farm labor. In 1969 Breiner was hired by the defendant Ted Olson as a farm manager. Breiner performed to Olson's satisfaction as manager of up to 12 quarter sections of land irrigated by center-pivot sprinklers. Breiner's compensation was increased from year to year. Breiner's evidence, if believed, would enable the jury to find that in 1970 Breiner noticed that his wife was becoming distant; that their sexual relations diminished in 1971 and in 1972 ceased, and the marriage otherwise deteriorated; and that Sharon and Olson had entered into a clandestine affair and were meeting in two different trailer houses (in one of which the Breiners resided) on the Olson farm where the Breiners lived. These rendezvous occurred when Breiner was absent from the farmstead doing farmwork elsewhere. The evidence would permit the jury to find that Breiner did not become aware of the meetings or realize the significance of some of the earlier occurrences until he discovered, in the summer of 1972, a key to the second trailer house (which was unoccupied and had been moved onto the place by Olson in 1971) hidden among his wife's possessions. After the discovery he entered and inspected the trailer house and found a bed neatly made. Because of his suspicions he disturbed the covers to some extent and upon inspecting the bed the following day he discovered the bed had again been neatly made. Breiner repeated the process and inspection several times with like results.

On August 4, 1972, Sharon left the farm, taking the children with her. She went to her mother's home where Breiner found her and attempted to persuade her to return home. She refused. On August 8, 1972, Breiner was served with a summons in a divorce action. On August 9, 1972, he discovered that Sharon had left the children with a Mrs. Hammond, a friend and former neighbor of the Breiners. He was told that Sharon had

gone to Norfolk to look for work. Breiner, accompanied by Mr. Hammond to whom he had made known his suspicions, investigated and discovered the family car, which was in Sharon's possession, at the Norfolk airport. Olson is a licensed pilot and operates an irrigation sprinkler manufacturing company, of which he is a major stockholder and officer. This corporation owns an airplane which Olson uses. As a result of further investigation, Breiner discovered that on August 9, 1972, Olson had rented a plane at another airport. Breiner suspected that Olson had met Sharon at the Norfolk airport and that they had gone to Omaha. Accompanied by Hammond, Breiner drove to Omaha and found the rented plane at Epply Air Field. He then, by means of a multitude of telephone calls, located the motel at which Olson was registered. Breiner and Hammond then went to the motel and obtained the room number. Hammond (whose voice was unknown to Olson), by means of pretense, induced Olson to open the door. When it opened Breiner burst into the room, followed by Hammond. Olson was clad in his shorts. Sharon was in the bed and, if the testimony of Breiner and Hammond is believed, she was apparently unclothed.

Olson and Sharon admitted on the witness stand that on the occasion of their discovery in the motel in Omaha they had committed adultery. They both denied having done so on any other occasion. Breiner and Hammond testified that at the motel both Olson and Sharon admitted previous acts of sexual intercourse between them. They also stated they loved one another. All this Olson and Sharon denied.

Olson and Sharon in their testimony admitted some of the suspicious circumstances to which Breiner testified, but gave explanations which were of an innocent nature. Sharon testified that she left her husband because he had physically and sexually abused her and had beaten the children. She further testified that Ol-

son had not influenced her decision to leave her husband. Both she and Olson testified that the trip to Omaha was a spontaneous, unplanned event. Mrs. Hammond testified that Sharon had made arrangements on July 24, 1972, to leave the children with her on August 9, 1972. Sharon denied this. On rebuttal Mrs. Hammond testified that in 1971 Sharon had told her that Breiner was working so hard that he was unable to satisfy her sexual needs.

It is apparent that, except for the admitted act of criminal conversation in the Omaha motel, a jury question was presented on all issues.

On August 10, 1972, Breiner was fired by Olson and told to vacate the trailer house. Thereafter litigation related to compensation allegedly owed by Olson to Breiner resulted.

We will treat the assignments in the order in which we have previously stated them. The first assignment of error deals with Breiner's testimony concerning other litigation between him and Olson. The gist of this testimony was that when Olson told Breiner to vacate the trailer house forthwith following the Omaha incident, Breiner demanded that Olson first pay him the money which he had coming and Olson responded that he would "be foolish to pay you so you would have some money to sue me." Breiner then went on to testify, without any objection on the part of the defendant, that he had not yet been paid; that he had salary coming for part of the month of August 1972; that he was owed pickup rental, two-thirds of a promised bonus of $3,000 for the year 1972, and a few hundred dollars on commission from crop production; and that lawsuits were pending on these matters. Defendant's counsel made no objection to this evidence concerning litigation except to challenge an alleged inaccurate statement of plaintiff's counsel as to its current status. Later in Breiner's testimony the subject was again brought up and at that time the testimony was as follows: "Q. Now, Mr. Breiner, as a re-

sult of these actions that you have testified about, yesterday and today, have you incurred a considerable amount of financial expenses? A. Yes, I have. Q. As a result of these actions, have you been involved in many different items of litigation in Holt County? A. Yes, I have. Q. Would you tell the jury how many different types of cases you have been involved in, and what they are about? A. Well, there are four different cases." After the answer to the last question, objection was made that the evidence was irrelevant. The court then excused the jury and the plaintiff's counsel made an offer of proof in which he described the various litigation and the expenses incurred by plaintiff in connection therewith. The court sustained the objections to the offer of proof and informed plaintiff's counsel that he would not be permitted to introduce evidence as to amounts of expenses incurred, but that his client could testify to the fact that expenses were incurred. Breiner then testified to that fact without any objection being made.

All this occurred on the first day of the trial during the testimony of the first witness, the plaintiff himself. After the plaintiff rested on the third day of trial, the defendant moved for a mistrial because of the admission of the testimony on other litigation.

The defendant's first assignment of error requires some discussion of the nature of the injuries for which recovery may be had in actions of this type. Elements of damage caused by alienation of affection and by an act or acts of criminal conversation are to some extent, at least, overlapping. 42 C. J. S., Husband and Wife, § 692, p. 347, § 706, p. 361. In either case, however, it is our view that the damages to which the plaintiff is entitled are only such as are the natural, probable consequence of the act complained of, or the direct probable consequence of the particular tort. See 42 C. J. S., Husband and Wife, § 692, p. 347. In this case apparently it is the plaintiff's theory that except for the

defendant having committed the adultery with the plaintiff's wife and the discovery of that fact by the plaintiff, the other litigation would never have ensued and therefore the plaintiff is entitled to recover his litigation expense as an element of damage in this case. The other litigation, although in a certain sense caused by the defendant's tortious conduct, really related to collateral matters and is not such damage as is the natural, probable consequence of the acts of the criminal conversation nor the direct result of the particular tort. Rather it resulted from the collateral fact that the plaintiff was an employee of the defendant who discovered the wrongful conduct to which defendant retaliated by firing the plaintiff.

Evidence of the other litigation was not relevant and material to the plaintiff's damages and should not have been admitted had proper, timely objection been made. Defendant, however, waived his objection. The following principles govern. A party on appeal may not properly assign the admission of evidence as error where no objection was made thereto in the trial. Kehr v. Kehr, 173 Neb. 532, 114 N. W. 2d 26. Error cannot be predicated on the admission of testimony when testimony of the same nature was previously admitted without objection. In re Estate of Kaiser, 150 Neb. 295, 34 N. W. 2d 366; Anson v. Fletcher, 192 Neb. 317, 220 N. W. 2d 371. If we assume that admission of the evidence relative to other litigation was so prejudicial as to entitle the plaintiff to a mistrial if a proper objection had been made, it is still nonetheless necessary that the motion for mistrial be timely made. See Pope v. Tapelt, 155 Neb. 10, 50 N. W. 2d 352. The motion was not timely in this case.

The defendant called Reverend Clarence Stenbeck, a Lutheran pastor, to testify. The offer of his testimony was, upon objection, excluded. The defendant assigns that ruling as error. The objection of the plaintiff to the testimony was on various grounds, including that

of privilege under section 25-1201(4), R. R. S. 1943, as well as hearsay, irrelevance, and immateriality. The various objections were sustained. We have carefully examined the offer of the testimony made by the defendant. The objection of privilege appears not to have been good. The objection of hearsay as it applies to a conversation between the witness and Sharon was good. Objection to the testimony of a conversation between Reverand Stenbeck and Breiner, which occurred sometime after the motel incident, contained nothing which was relevant or material to the issues to be decided in this case and the objection was properly sustained. There is therefore no merit in the defendant's second assignment of error.

The defendant's next assignment asserts that instructions Nos. 6 and 7, given by the trial court, were erroneous. We will not consider the assignment because the defendant did not, in his motion for a new trial, challenge these instructions. In State v. Knowles, 192 Neb. 281, 220 N. W. 2d 30, we said: "The correctness of a ruling of the District Court in giving or refusing instructions cannot be considered by the Supreme Court unless such ruling is first challenged in the District Court by a motion for new trial." In Drucker v. Goscar, Inc., 184 Neb. 475, 168 N. W. 2d 534, we said: "An assignment in a motion for a new trial that errors of law occurred at the trial does not present the correctness of giving or refusing instructions."

This brings us to the fourth assignment. Sometime during the course of the deliberations of the jury, the foreman sent to the trial judge the following inquiry: "Does the jury enter an amount of damages in either cause of action." The trial court, without advising counsel for either party of the inquiry and without them being present, responded to the jury's inquiry in the following manner: "In response to your question, the third paragraph of Instruction Number 9 states: 'Alienation of affections and criminal conversation are

separate and distinct wrongs', and recovery may be allowed for one or the other or both." This court has said: "In a case where it becomes necessary to give further instructions to a jury while it is deliberating, the proper practice is to call the jury into open court and to give any additional instructions in writing in the presence of the parties or their counsel. . . . It is error to give an instruction to a jury after it has retired to deliberate out of the presence of the parties and their counsel, but if it clearly appears that prejudice did not and could not flow therefrom, this is error without prejudice and not ground for reversal." Barry v. Moore, 172 Neb. 57, 108 N. W. 2d 401. The defendant's entire argument on this point is stated in his brief in the following language: "That error was reversible also because the instruction misled the jury. The initial instructions given by the court to the jury directed the jury to find in favor of the plaintiff and against the defendant on the second cause of action. The additional instruction, quoted above, contradicts the former one. As a result, the jury verdict and judgment must be set aside and a new trial granted."

It is to be noted that this instruction added nothing to the instructions which had already been given and as to which no objection is made. The defendant's argument that the added instruction contradicted the previous instruction directing a verdict for the plaintiff on the second cause of action demonstrates no prejudice to the defendant for the jury followed the court's instruction as to the second cause. The defendant surely cannot be heard to complain because the jury rendered no verdict against him on the first cause. If anything, the added instruction appears to have operated to the defendant's benefit and not his detriment. Under the principle enunciated in Barry v. Moore, *supra*, we cannot reverse for the party complaining clearly was not prejudiced by the error in giving the instruction in the absence of the attorneys.

Assignments Nos. 5 and 6 may be discussed together because both are assertions that the verdict was excessive. At 42 C. J. S., Husband and Wife, § 706, p. 361, there is an extensive discussion on the matter of damages in an action for criminal conversation. It is in part as follows: "While the damages in actions of this character are incapable of precise measurement, and there is no fixed rule for determining the amount thereof, in awarding damages the jury may consider, . . . the actual misconduct of defendant, the social relations of the parties, the existence of or lack of affection between the spouses, the destruction of plaintiff's home and happiness, and the pecuniary situation of the parties; and it has been held that the damages recoverable are fair compensation to plaintiff for the wrong so done him or her, including such elements as pain, suffering, injury to health, degradation, and humiliation, to which, in a proper case, may be added damages as compensation for the loss or impairment of the right of consortium resulting from the adultery." In White v. Longo, 190 Neb. 703, 212 N. W. 2d 84, we said: "In the absence of evidence of some special element of damage for which the law provides a specific means of measurement, it is the general rule that in an action for criminal conversation damages are incapable of precise measurement and there is no fixed rule for determining the amount thereof." Defendant seems to argue that the evidence discloses only a single act of adultery and therefore the verdict is necessarily excessive. This argument disregards the evidence and misapprehends the rule on damages. It is true that the direction of the verdict on the second cause was based upon a single admitted act of adultery. But this did not limit the jury to that one act when it came to determining damages. As we have already pointed out, the evidence supports the conclusion that other acts of adultery occurred and the jury was properly allowed to consider that in determining damages. Likewise, the jury

could, on the basis of the evidence, have found that even though Sharon did not have great affection for Breiner, or none at all, nonetheless these various acts of adultery were the cause of the breakup between the Breiners and that except for the acts the marriage may well have continued.

Jury verdicts in actions for interference with the marriage relationship should be set aside by appellate courts as excessive only where it clearly appears that the award was the result of passion and prejudice on the part of the jury. Hansen v. Strohschein, 178 Neb. 367, 133 N. W. 2d 598; Speck v. Gray, 14 Wash. 589, 45 P. 143.

The plaintiff in his cross-appeal argues that the verdict of the jury on cause of action No. 1 is contrary to the evidence. The evidence as to the affection existing between Sharon and Breiner is conflicting. The cross-appeal is without merit.

AFFIRMED.