TIMOTHY L. CHOAT, APPELLANT, V. VICKY M. CHOAT, APPELLEE.

359 N.W.2d 810

Filed December 28, 1984.   No. 83-722.

Larry D. Bird of Treadway, Bird & Albin, P.C., for appellant.

Stan A. Emerson of Luckey, Sipple & Hansen, for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Petitioner appeals a dissolution of marriage decree, claiming two errors, (1) the finding that medical charges incurred by his wife were joint debts to be paid by him and (2) the order requiring him to pay all major marital debts was unfair.

Timothy L. Choat and Vicky M. Choat were married August 2, 1980. No children were born of the marriage. Timothy is employed by his father, earning between $10,000 and $13,000 annually. Vicky has two jobs, earning about $6,000 annually.

The facts involve two successive dissolution proceedings commenced by Timothy. In the first, a decree was entered April 6, 1982; in May, Vicky had brain surgery, incurring about $11,000 in hospital and medical expenses; in August the parties reconciled, and upon joint motion the April 6 decree was set aside on September 21, 1982.

In February 1983 Timothy filed his second petition. A decree was entered July 12, 1983, assigning personal property to the parties: to Vicky, about $2,000, and to Timothy, from about $3,500 to $7,000, depending on whether the car assigned was valued at the time of separation or time of trial. This decree was modified as to debts on August 23, 1983, ordering Timothy to assume the obligations owed to his father (no amount stated), the medical bills amounting to $11,078.13, and a $400 utility account. Vicky was ordered to pay a $160 telephone bill. She had paid $400 on the medical bill.

As to the first assignment, there is no merit to Timothy's argument that since Vicky's medical expense occurred after the April 6, 1982, decree was entered, it was her separate debt. Neb. Rev. Stat. § 42-372 (Reissue 1984) provides in part:

A decree dissolving a marriage shall not become final or operative until six months after the decree is rendered, except for the purpose of review by appeal . . . . If no such proceedings have been instituted, the court may, at any time within such six months, vacate or modify its decree. . . .

This statute has been long interpreted to mean that during the 6-month period following a dissolution of marriage decree, the action is still pending, and the court can, at any time, for good reason, vacate or modify it. See, *Shinn v. Shinn*, 148 Neb. 832, 29 N.W.2d 629 (1947); *State v. Palmer*, 215 Neb. 273, 338 N.W.2d 281 (1983). " ' "During the entire pendency of that decree, the marital relation continues. . . ." ' " *In re Estate of Watson*, 217 Neb. 305, 307, 348 N.W.2d 856, 858 (1984).

The April 6, 1982, decree was set aside within the 6-month period; it was a nullity, as the trial court found. The hospital and medical expenses were the joint debts of the parties. See *In re Estate of White*, 150 Neb. 167, 33 N.W.2d 470 (1948).

> [T]he division of property and the awarding of attorney fees in marriage dissolution cases are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. In our de novo review, where the evidence is in conflict, we will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another.

*Guggenmos v. Guggenmos, ante* p. 746, 748-49, 359 N.W.2d 87, 90 (1984). "There is no mathematical formula for dividing property when a marriage is dissolved. *Such awards are to be determined by the facts in each case. . . . The ultimate test is one of reasonableness.*" (Emphasis supplied.) *Id.* at 752, 359 N.W.2d at 92-93.

Concerning the last assigned error, the focus is on two debt areas: (1) the joint medical debts above discussed and (2) Timothy's claim that he owes his father, Gary Choat, $22,000. The father did not testify, and there is no direct written evidence of that debt. Timothy's supporting testimony, including answers to questions put to him by the court seeking clarification, was evasive, inconclusive, and contradictory. In 1982 Timothy bought cattle for $33,000 with money supplied by his father; just prior to the entry of the July 12 decree, he sold the cattle for $47,000; from these proceeds he paid $16,000 on bills (no accounting made), and the $31,000 remaining was paid to his father to pay such bills as he saw fit. He testified as to

other advancements made by his father that were a part of the $22,000 debt: a $450 loan, $595 to Vicky, $5,558 for feed, $5,000 paid to a creditor bank, and $1,000 owing on Timothy's hospital account; however, the amount of liability, if any, of either party to Gary Choat is not established. It is noted that Timothy's motion for new trial includes a request to present new evidence to explain the confusion in the record concerning the $22,000 debt.

The debts of the parties are facts and circumstances to be considered in the property division. See, *Redmond v. Redmond*, 209 Neb. 745, 311 N.W.2d 517 (1981); 24 Am. Jur. 2d *Divorce and Separation* § 935 (1983). Likewise, Timothy's failure to account for the livestock and their sale proceeds as marital assets is a circumstance to be considered when assigning debt responsibility, see, *Edwards v. Edwards*, 199 Neb. 581, 260 N.W.2d 319 (1977), and *Baker v. Baker*, 201 Neb. 409, 267 N.W.2d 756 (1978), and the trial judge noted this circumstance when entering judgment.

Considering the joint obligation of the parties to pay the hospital and medical debts, the division of property, the earning capabilities of the parties, the failure to prove Timothy's liability to his father in any amount, and the other attending circumstances, there was no abuse of discretion in the debt responsibility order entered August 23, 1983, except that the first sentence should be modified to read, "1. Petitioner is to hold respondent harmless and to assume the outstanding obligation owed to his father as well as all medical bills that were incurred by the Respondent as identified in Exhibit '8' offered herein and admitted into evidence."

The appellee is allowed the sum of $750 for the services of her attorney in this court.

AFFIRMED AS MODIFIED.