DONALD R. VACEK, JR., APPELLANT AND CROSS-APPELLEE, V. G. RONALD AMES, APPELLEE AND CROSS-APPELLANT.

377 N.W.2d 86

Filed December 6, 1985. No. 84-361.

Gordon R. Hauptman and Steven D. Wolf of Westergren, Hauptman & O'Brien, P.C., for appellant.

Edward D. Hotz of Hotz, Kizer & Jahn, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This was an action for alienation of affections and criminal conversation brought against G. Ronald Ames by Donald R. Vacek, Jr. A verdict was directed against the defendant on liability on the criminal conversation count. The jury returned a verdict for the plaintiff on both causes of action and fixed the damages at $100,000. The jury found that the damages on the criminal conversation count were $20,000, but that amount was included in the $100,000 awarded on the other cause of action.

The trial court found that the verdict for alienation of affections was excessive and granted a new trial on that cause of action as to damages only. The verdict on the criminal conversation count was set aside on the ground that actions for criminal conversation should be abolished.

The plaintiff has appealed and contends that the trial court erred: (1) In holding that criminal conversation was not a valid cause of action in this state; and (2) In finding that the verdict on the cause of action for alienation of affections was excessive

and granting a new trial on the issue of damages on that cause of action. The defendant has cross-appealed, claiming that the trial court erred in admitting evidence of the defendant's income.

The record shows that the plaintiff married Cherie Cernik on May 15, 1976. Their marriage was a relatively stable one during the first few years, with the couple planning for their future, making decisions together, planning for children, traveling together, and socializing with other couples. In 1980 Cherie became dissatisfied with her job at Mutual of Omaha. In mid-September of 1980 she was promoted to a secretarial position within Mutual. In her new position Cherie performed secretarial duties for three individuals, one of whom was the defendant, Ames. Ames was a second vice president in Mutual's data processing department at that time.

In 1981 the plaintiff began to notice changes in Cherie's behavior and her attitude toward their marriage. Most notable was the fact that she began to work longer hours.

The defendant testified that he first began to see Cherie alone socially in February of 1981. From that point on, the frequency of their dates for drinks or dinner after work increased from once every couple of weeks in late February to early April, to once every week in April and May, to sometimes twice a week in late May and June. The defendant admits that on these occasions he and Cherie went to various bars, restaurants, hotels, and motels. On Memorial Day weekend in 1981, they took a 2-day trip to Sioux City. She also accompanied him on a trip to Kearney, Nebraska, for the Fourth of July weekend. At the time of this latter trip, the defendant knew that Cherie had left the plaintiff and had taken up residence in a motel.

Cherie returned to the plaintiff during the week following the trip to Kearney. Four days later, she again left the plaintiff and moved into an apartment on the following weekend. The defendant left his family a few days later and moved in with Cherie. The defendant admits that he and Cherie engaged in sexual intercourse in late August 1981. Cherie filed for divorce in October of 1981. The decree was entered on April 16, 1982. Cherie married the defendant on February 14, 1983.

We have held, recently, that a cause of action for criminal

conversation exists in Nebraska. *Kremer v. Black*, 201 Neb. 467, 268 N.W.2d 582 (1978). See, also, *Creason v. Myers*, 217 Neb. 551, 350 N.W.2d 526 (1984). The trial court erred in setting aside the verdict on that cause of action on the ground that the cause of action should be abolished.

Criminal conversation is the violation of a spouse's right to the exclusive privilege of sexual intercourse. *Oliver v. Oliver*, 159 Neb. 218, 66 N.W.2d 420 (1954). In *Kremer, supra* at 470, 268 N.W.2d at 584, we acknowledged the common-law view that the sexual relation in a marriage "is one that must be maintained inviolate for the well-being of society."

With respect to the verdict on the cause of action for alienation of affections, we believe the record supports the verdict. Although the evidence was in conflict in some areas, the jury resolved those conflicts in favor of the plaintiff. A party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).

> A jury verdict may not be set aside unless it is clearly wrong and it is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party and all conflicts in the evidence . . . and the credibility of the witnesses is [sic] for the jury and not for the court.

*Kniesche v. Thos*, 203 Neb. 852, 856, 280 N.W.2d 907, 910 (1979).

The plaintiff's evidence showed that the marriage had been a relatively stable one up until the time that Cherie became involved with the defendant. At that point Cherie's interest in the marriage and in sex with the plaintiff began to diminish. The plaintiff testified that he loved his wife and did not want the divorce. When Cherie left him, he was "totally devastated." His pain and suffering were evidenced by the decline in the quality of his job performance in the Postal Service and testimony as to his emotions through 1983. The plaintiff sought counseling from a priest and has experienced religious conflicts because of the divorce. He did not date for a year and a half after the divorce became final. As a result of the divorce, he has lost the

friendship and companionship of Cherie's parents.

In an alienation of affections case, the plaintiff is entitled to the damages which are the natural, probable consequence of the act complained of. *Breiner v. Olson*, 195 Neb. 120, 237 N.W.2d 118 (1975). The elements of the damages for which a plaintiff may recover include: lost comfort, society, love, and protection; pain; suffering; injury to health; degradation; and humiliation. *Creason, supra*; *Breiner v. Olson, supra*. Marital stability is a factor to be considered in the assessment of damages in an alienation of affections case. *Creason, supra*.

In previous alienation of affections cases, we have been reluctant to set aside the verdict. There is no mathematical method or formula for determining appropriate compensation. *Hansen v. Strohschein*, 178 Neb. 367, 133 N.W.2d 598 (1965); *Baltzly v. Gruenig*, 127 Neb. 520, 256 N.W. 4 (1934). A jury, with proper instruction, is qualified to determine such damages. *Creason, supra*.

In this case the jury was instructed not to allow sympathy or prejudice for or against either party to influence its verdict. The jury was further instructed to consider facts such as the marriage's previous stability, in mitigation of the plaintiff's damages, and to consider evidence of the defendant's financial status only as it may have been a cause of the alienation of Cherie's affections and *not* as it related to damages. The jury was instructed not to compensate the plaintiff excessively for any loss sustained, nor to allow damages by way of punishment or sympathy.

As we view the record, it sustains the verdict, and the trial court erred in finding the verdict was excessive.

On the cross-appeal the defendant claims error in the admission of evidence as to his financial condition. At the trial he testified to his income for 1981 through April of 1982, without objection.

The Vaceks' divorce became final on October 16, 1982. Over objection, the trial court permitted the plaintiff to examine the defendant as to his income after April 1982 and up to October 1982.

The defendant testified that his annual income in 1981 was $62,000, with an increase annualized at $68,000 in February

and March of 1982. On April 16, 1982, the defendant's income rose to $73,000. In June of 1982 it rose again to $83,000 per year, which was his income on October 16, 1982.

The defendant claims that evidence as to his income was irrelevant except as it related to his ability to pay a judgment, and was therefore inadmissible and prejudicial.

In *Baltzly, supra* at 526, 256 N.W. at 6-7, we held:

> As a general rule, testimony as to the financial condition of the defendant has no place in such a controversy, and should not be admitted in evidence. If, however, one who is accused of alienating a husband's affections held out to him her need of his assistance in handling her property, and continually consulted with him, and he was highly flattered and attracted thereby, and enjoyed sharing in such responsibilities, and if this was one of the blandishments by which defendant induced him to desert his wife, it might be material.

In the present case, evidence of the defendant's income was relevant to show how he accomplished the alienation of Cherie's affections. There was testimony that Cherie was impressed with the defendant's background and potential. There was also testimony that after the Vaceks separated, the defendant and Cherie took many out-of-town trips together and that the defendant gave her a dinner ring in April of 1982. The plaintiff alleged that his wife's affections were alienated at least in part by the defendant's provision of gifts, money, and trips. Evidence as to the defendant's income was relevant to show that the defendant was in fact in a position to entice the plaintiff's wife in the manner alleged by the plaintiff. The jury was instructed to consider this evidence only as it related to the cause of the alienation of Cherie's affections for the plaintiff. We conclude that the evidence as to the defendant's income was admissible under the circumstances in this case.

Although the Vacek marriage was dissolved on April 16, 1982, the decree was not final until 6 months later. Neb. Rev. Stat. § 42-372 (Reissue 1984). The marital relation continued during this period. *Choat v. Choat*, 218 Neb. 875, 359 N.W.2d 810 (1984). In the event of a reconciliation the decree could have been vacated. On that basis, evidence as to the defendant's

income during the 6-month period after the date of the decree was relevant and admissible.

The judgment is reversed and the cause remanded with directions to reinstate the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., dissenting.

For the reasons more particularly set out by McCown, J., in his dissent in *Kremer v. Black*, 201 Neb. 467, 268 N.W.2d 582 (1978), and my own dissent in *Creason v. Myers*, 217 Neb. 551, 350 N.W.2d 526 (1984), I must dissent from the majority opinion in this case. In my view, perpetuating either of these causes of action created by courts ignores the reality of today's lifestyle. I would abolish both causes of action. While we ought to strive to improve the sanctity of marriage, the fact that the relationship withers and dies, as it did in this case, should not be grounds for one to recover what are obviously punitive damages. If the majority opinion is strictly construed, one who engages in a social relationship with another who has obtained a decree of divorce, during the 6 months after the decree was obtained but before it becomes final, may be liable in a suit for alienation of affections because by engaging in this relationship the formerly married couple is prevented from reconciling. In my view, that is not appropriate.

BOSLAUGH, J., dissenting.

There was substantial evidence in this case that the Vacek marriage had deteriorated before Cherie became acquainted with the defendant. In my opinion the verdict on the cause of action for alienation of affections was excessive. The order of the trial court granting a new trial on that cause of action should have been affirmed.

WHITE, J., concurring in part, and in part dissenting.

While I agree with our holding in *Creason v. Myers*, 217 Neb. 551, 350 N.W.2d 526 (1984), reaffirming alienation of affections as a viable cause of action in this state, I do not agree that criminal conversation in its common-law form should be similarly retained.

In *Kremer v. Black*, 201 Neb. 467, 268 N.W.2d 582 (1978), a majority of this court held that common-law criminal

conversation should be retained as a cause of action in this jurisdiction. In his dissent Justice McCown enumerated legal and policy reasons why criminal conversation, in its traditional common-law form, had outlived its usefulness. I agreed with Justice McCown's reasoning then. However, I now believe the action should be abolished.

The action for criminal conversation is not only an anachronism in today's world, it is manifestly unjust and irrational in the hands of mercenary and vindictive spouses.

Law is not a fixed science. Principles of law change with the passing of time, through the gradual change of thought on the part of society and social institutions. When the reasons behind a traditional principle of law have ceased to exist, then, in the richest tradition of the common-law system, the rule of law should be altered to reflect those changes.

Common-law criminal conversation is a cause of action of judicial making. As Justice Cardozo once said, "A rule which in its origin was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by courts when the *mores* have so changed that perpetuation of the rule would do violence to the social conscience." This court's capacity for growth and change in the judicial development of the common law should reflect no less.