JOAN WHITE, APPELLEE, v. COLLEEN LONGO, APPELLANT.
212 N. W. 2d 84

Filed November 9, 1973. No. 38983.

David S. Lathrop of Lathrop, Albracht & Dolan, for appellant.

Alfred A. Fiedler of Fiedler & Fiedler, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action was brought by Joan White, wife of Duane White, against Colleen Longo and stated two causes of action, one for alleged alienation of affections of Duane White and the second for criminal conversation or having committed adultery with Duane White on one or more occasions. The trial court submitted to the jury issues of both liability and damages on the first cause of action and the jury found for the defendant. The trial court directed a verdict against the defendant on the issue of liability on the second cause of action and submitted to the jury only the question of damages, and on that issue it returned a verdict in the amount of $12,500.

The defendant appeals from the verdict and judgment and denial of motion for new trial on the second cause. There is no cross-appeal on the first cause and the verdict and judgment thereon have become final.

Defendant assigns as error: (1) The admission into evidence over objection of tape recordings obtained by unlawful wiretaps of telephone conversations between

defendant and Duane White. (2) The direction of the verdict against the defendant on the criminal conversation cause of action. (3) Failure of the court to instruct on the law applicable to the issue of damages for criminal conversation.

I

During the direct examination of the plaintiff she testified to overhearing on the extension telephone of the White residence an incriminating conversation between defendant and Duane White. It could be inferred from some of her answers to further interrogation that she had more information than was disclosed by overhearing this one telephone conversation. On cross-examination she was asked by the defendant's counsel if she had ever recorded any of these conversations. She acknowledged she had and that the recordings existed. On redirect examination more information was developed concerning the number of conversations recorded. Later the plaintiff was recalled on her own behalf and her counsel began to lay foundation for the introduction of the recordings. Counsel for the defendant asked leave to cross-examine as to the foundation and it was then brought out clearly for the first time that the recordings had been made by means of a wiretap with equipment furnished by a private investigator and installed by the plaintiff in accordance with instructions received from the investigator. It was further developed that neither Duane White nor the defendant had ever been informed of the existence of the wiretap.

The recordings were offered by the plaintiff. The defendant objected upon the grounds that the records had been made in violation of section 605 of the Federal Communications Act and were for that reason inadmissible. The objection was overruled, the recordings were received, and relevant portions were heard by the jury.

Section 605 of 47 U. S. C. A., provides in part as fol-

lows: "No person not being authorized by the sender shall intercept any communication and divulge . . . the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." The quoted provisions of the statute have been construed to pertain to intrastate as well as interstate communications. Weiss v. United States, 308 U. S. 321, 60 S. Ct. 269, 84 L. Ed. 298. Sections 86-701 to 86-707, R. R. S. 1943, likewise make it unlawful, among other things and with certain exceptions, to intercept by means of a wiretap any telephone communication and to disclose the contents of the intercepted communication. Both the federal and state statutes prescribe criminal penalties for violation and each constitutes a rule of evidence; the federal statute by virtue of court interpretation and the Nebraska statute by virtue of its own specific terms.

The United States Supreme Court in Lee v. Florida, 392 U. S. 378, 88 S. Ct. 2096, 20 L. Ed. 2d 1166, held that section 605, 47 U. S. C. A., was applicable to state proceedings and overruled the earlier case of Schwartz v. Texas, 344 U. S. 199, 73 S. Ct. 232, 97 L. Ed. 231, which had decided that the section did not forbid the use of such illegally obtained evidence in state court criminal trials. In Lee v. Florida, *supra*, the court said: "Section 605 was enacted as part of the Federal Communications Act of 1934, 48 Stat. 1103, six years after the Court had said in Olmstead v. United States, 277 U. S. 438, 465, that 'Congress may of course [legislate to] protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence. . . .' In Nardone v. United States, 302 U. S. 379, the Court was first called upon to decide whether § 605 had indeed served to render evidence of intercepted communications inadmissible in a federal trial. In that case the Government urged that 'a construction be given the section which would exclude federal agents since it is improbable Congress intended to hamper and impede the activities of the government in the detection and pun-

ishment of crime.' 302 U. S., at 383. In reversing the judgment of conviction, the Court's answer to that argument was unequivocal:

" '[T]he plain words of § 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that "no person" shall divulge or publish the message or its substance to "any person." To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments. . . .

" 'Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty. The same considerations may well have moved the Congress to adopt § 605 as evoked the guaranty against practices and procedures violative of privacy, embodied in the Fourth and Fifth Amendments of the Constitution.' 302 U. S., at 382, 383."

The court further said: "[Our decision] is buttressed as well by the 'imperative of judicial integrity.' Elkins v. United States, 364 U. S. 206, 222. Under our Constitution no court, state or federal, may serve as an accomplice in the willful transgression of 'the Laws of the United States,' laws by which 'the Judges in every State [are] bound. . . .'

"Finally, our decision today is counseled by experience. The hope was expressed in Schwartz v. Texas that '[e]nforcement of the statutory prohibition in § 605 can be achieved under the penal provisions' of the Communications Act. 344 U. S., at 201. That has proved to be a vain hope. Research has failed to uncover a single reported prosecution of a law enforcement officer for violation of § 605 since the statute was enacted. We conclude, as we concluded in Elkins and in Mapp, that nothing short of mandatory exclusion of the illegal evi-

dence will compel respect for the federal law 'in the only effectively available way—by removing the incentive to disregard it.' Elkins v. United States, 364 U. S., at 217."

The Nebraska statute, in addition to its prohibitions provides for court authorized interception of messages upon application of the Attorney General or a county attorney and makes two general exceptions to the prohibitions. Section 86-702(2), R. R. S. 1943, in part provides: "(b) It shall not be unlawful under sections 86-701 to 86-707 for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

. "(c) It shall not be unlawful under sections 86-701 to 86-707 for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state or for the purpose of committing any other injurious act."

It is clear that the plaintiff in this case does not come within either of these exceptions. She was not a person "acting under color of law" with the "prior consent" of one of the parties to the communication under subsection (2)(b), nor was she a party to the communication, nor did she have the consent of a party to the communication under subsection (2)(c), of section 86-702, R. R. S. 1943.

Section 86-705, R. R. S. 1943, makes it clear that the statute prescribes a rule of evidence applicable to civil as well as criminal proceedings for the courts of this state. It says in part: "(8) The contents of any intercepted wire or oral communication or evidence derived

therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a federal or state court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

"(9) *Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this state, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted,* the order of authorization or approval under which it was intercepted is insufficient on its face, or the interception was not made in conformity with the order of authorization or approval. Such motion shall be made before the trial, hearing, or proceeding *unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion.* If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of sections 86-701 to 86-707. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice." (Emphasis supplied.)

The fact that the plaintiff tapped her own telephone is immaterial as she was not a party to the communica-

tion and it is the parties to the communication who are protected by the statute.

In Markham v. Markham, 272 So. 2d 813 (Fla., 1973), the Supreme Court of Florida so construed a state statute similar to ours.

We believe the mandate of our Legislature is clear. The public policy of this state is to exclude the results of such unlawful wiretaps and this leads us to the conclusion that the objection on the basis of the federal statute was sufficiently specific. Our determination of the question on the basis of the Nebraska statutes makes it unnecessary for us to consider whether the federal statute has application only to criminal prosecutions. The tapes therefore having been unlawfully obtained were not admissible as evidence. The content of the tapes was damaging and the error was clearly prejudicial, and requires reversal and a new trial in this case. Upon retrial neither party shall be permitted on either direct or cross-examination to refer to the wiretaps, the recordings, or their contents.

## II

Since the evidence on retrial will, because of our determination of the evidentiary question, be different than that previously before the trial court, we find it unnecessary to determine whether the trial court erred in directing the verdict on liability. That matter will, if appropriate motions are made on retrial, have first to be decided by the trial court on the basis of the evidence before it at that time.

## III

The third assignment of error is that the court erred in failing to instruct the jury upon the law applicable to the determination of damages for criminal conversation. It is evident from the argument that this assignment is directed both to a claimed failure of the court to define the elements of damage, as well as to prescribe criteria for measuring their monetary value. The defendant did not request any instruction defining either

the elements of damage which may be considered, or one suggesting any method of measuring such damage. Was the court required to do so in the absence of a request for a specific instruction?

Accordingly we must examine the instructions given to determine whether or not they were sufficient to comply with the obligation of the trial court to instruct on the issues irrespective of any request.

In a portion of instruction No. 2, the court properly defined the cause of action for criminal conversation in the following language: "In her second cause of action Plaintiff alleges that the defendant had sexual intercourse with Plaintiff's husband; that by reason of such intercourse Plaintiff has been damaged in her right and entitlement to be the exclusive recipient and companion in sexual activities with her husband, for which she seeks judgment against the defendant." In instruction No. 6, after directing the verdict on that cause of action, the court told the jury: "Your verdict will award her a sum of money as you find she has proved by a preponderance of the evidence that will fairly and reasonably, but not excessively, compensate her for the harm caused to her by the wrongful conduct of the defendant."

Our examination of the evidence in this case leads us to the conclusion that the quoted portion of instruction No. 6 is correct as far as it goes, and when taken together with the quoted portion of instruction No. 2 is a correct statement of the rules as to damages insofar as they relate to the pleadings and the evidence pertaining to the cause of action for criminal conversation. The plaintiff alleged in her petition that: "Plaintiff has been damaged in her desire, right and entitlement to be the exclusive recipient and companion in sexual activities of Duane White and has thereby been damaged."

The instruction relative to damages which may be appropriate or proper in any particular case will neces-

sarily depend upon the evidence presented on the issue. In this case the evidence of damages would have permitted, although it did not require the jury to conclude, that sexual relations between the plaintiff and her husband ceased because he was finding his satisfaction with the defendant, and thus the plaintiff was deprived of her right to be the exclusive sexual companion of her husband and thus suffered emotional distress and deprivation. There was, on the other hand, evidence that the element of exclusiveness in this case was not worth much. Duane White testified that he was and always had been an open advocate of free love unrestricted by marital ties and even before the defendant entered the picture never felt constrained to nor did he confine his sexual activities to the marital bed and that the plaintiff had been aware of this. The plaintiff herself described him as a Svengali. These later considerations, if true, were for consideration in mitigation of damages.

The instructions in question were adequate to describe the element of damage and to limit them to that pled and to the evidence and were not prejudicially erroneous, at least in the absence of a request for an appropriate, more specific instruction. If the defendant desired a specific instruction limiting the element of damage which could be considered then she should have submitted one for the court to consider.

Where a general instruction on an issue is correct, if a party desires a fuller or more specific instruction on the subject matter, it must be asked for. Kasparek v. May, 182 Neb. 582, 156 N. W. 2d 144; Carter v. Chicago, B. & Q. R. R. Co., 175 Neb. 188, 121 N. W. 2d 44.

There was no evidence introduced pertaining to any element of monetary damage caused by the adulterous acts as to which some specific rule of measurement applies. There was, therefore, no occasion for the court to give an instruction on the measure of damages beyond that which was given. It is only where the law provides a specific measure of damages that the court is

required to instruct thereon. Hickman-Williams Agency v. Haney, 152 Neb. 219, 40 N. W. 2d 813. The general rule as to the measurement of damages in an action for criminal conversation is stated in a leading text as: The damages in an action for criminal conversation are incapable of precise measurement and there is no fixed rule for determining the amount thereof. 42 C. J. S., Husband and Wife, § 706, p. 361. The instruction of the court on the general measure of compensatory damages was therefore correct.

REVERSED AND REMANDED FOR NEW TRIAL.