**Duane WHITE, Appellant,**

v.

**Harl WEISS et al., Appellees.**

**Colleen LONGO, Appellant,**

v.

**Harl WEISS et al., Appellees.**

Nos. 75–1748, 75–1818.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1976.

Decided May 26, 1976.

Rehearing and Rehearing En Banc Denied July 2, 1976.

**1068**

Michael J. Dugan, Omaha, Neb., and David S. Lathrop, Omaha, Neb., for appellants.

R. David Garber, Garber & Batt, Omaha, Neb., for appellees.

Richard J. Bruckner, Omaha, Neb., for Joan Edwards.

Before VOGEL and VAN OOSTERHOUT, Senior Circuit Judges, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

Harl Weiss, a private detective and an officer and employee of Midwest Bureau of Investigation, Inc. (Midwest), in late 1970, furnished telephone wiretap recording equipment and assisted in its installation at the Bellevue, Nebraska, home of Duane White and his wife, Joan. Joan White had arranged for the installation of the equipment in order to intercept her husband's telephone conversations since she suspected that he was engaged in an extra-marital love affair. The wiretap disclosed the existence of such an illicit affair between Duane White (appellant in No. 75–1748) and Colleen Longo (appellant in No. 75–1818) and the wiretap recordings were utilized in an action for criminal conversation brought in state court by Joan White[1] against Colleen Longo.[2] As an aftermath of this state proceeding, Duane White and Colleen Longo (plaintiffs-appellants) have separately brought these actions for damages against defendants-appellees, detective Weiss and Midwest, under 18 U.S.C. § 2520, which authorizes a civil action for damages by "[a]ny person whose wire or oral communication is intercepted, disclosed, or used * * *" in violation of pertinent provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20.[3] The district court dismissed the actions brought by Ms. Longo and Duane White in response to motions of Weiss and Midwest for summary judgments. Ms. Longo and Mr. White thereafter brought these timely appeals.

The appeals present two questions: (1) whether the provisions of § 2520 are intended to regulate the use of communication interception equipment by one spouse against the other within the marital home in connection with domestic relation conflicts when a third party private detective is involved; and (2) whether, under the facts alleged, detective Weiss has intercepted any communications within the purview of § 2520.

The district court answered the second question affirmatively but the first nega-

---

1. Mr. and Mrs. White were divorced on April 5, 1971, and Mrs. White obtained the right to resume using her former name, Joan Edwards. In this opinion, for simplicity, we shall refer to Ms. Edwards by her married name, Mrs. White.

2. *White v. Longo*, 190 Neb. 703, 212 N.W.2d 84 (1973). The Nebraska Supreme Court set aside Mrs. White's recovery of damages because of the erroneous admission into evidence at trial of the recorded telephone conversations. These conversations had been obtained in violation of state law.

3. The text of § 2520, as relevant, reads:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

tively, and entered summary judgment dismissing the action. The district court, relying upon *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), held:

> The *Simpson* case indicates that while the naked language of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 reaches the facts of this case, the legislative history compels a contrary conclusion. The extremely thorough analysis in *Simpson* cannot be improved upon, and convinces the Court that Congress never intended that this Act be applied in a factual situation such as is present in this case.

We disagree. Neither the legislative history, nor the language or holding of *Simpson* insulates a private detective from civil liability for violations of the Act here in question. Thus, we reverse and remand this case.

I. *Whether the Private Detective's Conduct Here Comes Within the Ambit of § 2520.*

█ We quote the relevant facts as found by the district court:

> In the latter part of 1970, [Ms.] Edwards [the former Mrs. White] overheard discussions between the plaintiffs herein [Duane White and Colleen Longo] which indicated that they were engaged in an extra-marital love affair. [Ms.] Edwards contacted an attorney who, in turn, put her in contact with Harl Weiss, a private investigator for and officer of the Midwest Bureau of Investigation.
>
> After considerable discussions, in December, 1970, Harl Weiss took wiretap and recording equipment to the White home and instructed [Ms.] Edwards while she did the manual work necessary to attach and activate the equipment. For three and a half months all calls (both *incoming* and *outgoing*) were recorded and some were disclosed to the Midwest Bureau of Investigation.

In the most relevant court decision to date, *Simpson v. Simpson*, 490 F.2d 803 (5th Cir. 1974), the husband, using electronic equipment in the home, intercepted and recorded on tapes his wife's telephone conversations. The husband thereafter played some of the tapes to various neighbors and family members. He also played them for a lawyer, on whose advice the wife agreed to an uncontested divorce. Following the divorce, the wife brought an action for damages against her former husband under 18 U.S.C. § 2520. The district court denied recovery and the Fifth Circuit agreed. That court concluded:

> The naked language of Title III, [of the Omnibus Crime Control and Safe Streets Act of 1968] by virtue of its inclusiveness, reaches this case. However, we are of the opinion that Congress did not intend such a far-reaching result, one extending into areas normally left to states, those of the marital home and domestic conflicts. We reach this decision because Congress has not, in the statute, committee reports, legislative hearings, or reported debates, indicated either its positive intent to reach so far or an awareness that it might be doing so. [*Id.* at 805 (footnote omitted).]

As the district court noted, the Fifth Circuit comprehensively reviewed the legislative background to the enactment of Title III, and particularly emphasized relevant passages in that history bearing upon the use of electronic equipment in marital disputes. The *Simpson* opinion observed:

> It should be noted that the concerns and information in these passages [of legislative history] are primarily directed towards the involvement of private investigators in marital conflicts. [*Id.* at 808.]

Significantly, the court added:

> Indeed, were appellant seeking to recover from a third party, we could not, on the basis of this legislative history, accept the defense that the interceptions were authorized by the husband. However, to our minds a third-party intrusion into the marital home, even if instigated by one spouse, is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse. The latter, it seems to us, is

consistent with whatever expectations of privacy spouses might have vis-a-vis each other within the marital home. [*Id.* at 808 (footnote omitted).]

In a footnote the court remarked:

We are here noting only that it is a large jump from a prohibition on third-party surveillance to one on personal spousal surveillance. [*Id.* at 809 n.15.]

Thus, the *Simpson* opinion does not support the district court's view that Congress did not intend Title III to encompass wiretap surveillance by a private detective even though within the marital home and instigated by one spouse against the other. Indeed, the *Simpson* court comments are to the contrary.

As noted, § 2520 grants a civil cause of action to any person whose communications are unlawfully intercepted against "any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications * *." That express language, supported by the legislative history, clearly brings private detectives within the reach of the statute.

Congress carefully defined the terms used in Title III, *see* § 2510, and explicitly delineated the exceptions to any violations of the Act, *see, e.g.,* § 2511(2). The report of the Senate Judiciary Committee capsulated the purposes of the Act and discussed the exceptions:

Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. To assure the privacy of oral and wire communications, title III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause. The *only exceptions* to the above prohibition are: (1) the power of the President to obtain information by such means as he may deem necessary to protect the Nation from attack or hostile acts of a foreign power, to obtain intelligence information essential to the Nation's security, and to protect the internal security of the United States from those who advocate its overthrow by force or other unlawful means; (2) employees of the Federal Communications Commission may, in the normal course of employment, intercept and disclose wire communications in the discharge of the monitoring responsibilities discharged by the Commission in the enforcement of chapter 5 of title 47 of the United States Code; and (3) employees of a communication common carrier may intercept and disclose wire communications in the normal course of their employment while engaged in any activity necessary to the rendition of service, or protection of the rights or property of the carrier of such communication. [S.Rep.No.1097, 1968 U.S.Code Cong. & Admin.News, pp. 2153–54 (emphasis added).]

In *United States v. Schrimsher*, 493 F.2d 848 (5th Cir. 1974), the Fifth Circuit narrowly read the judicial exclusion adopted in *Simpson* as limited to one spouse's personal wiretapping of the other spouse within the marital home. In *Schrimsher*, a criminal prosecution, in which the accused wiretapped the phone in the home of a former lover, the court said:

The Court in *Simpson* relied in part upon a provision in the Act which indicated that Congress intended to adjure from deciding the extent of privacy family members could expect within the home vis-a-vis each other. The Court expressed doubts about even this limited exclusionary construction of the statute, however, and emphasized that "No public official is involved, nor is any private person other than appellee [the wife], and the *locus in quo* does not extend beyond the marital home of the parties." [493 F.2d at 850–51.]

One other case has been brought to our attention as pertinent. In *Remington v. Remington*, 393 F.Supp. 898 (E.D.Pa.1975),

the plaintiff-husband brought an action against his wife, a private detective agency, and his wife's attorneys for intercepting his private telephone communications through the use of an electronic wiretapping device. Since the wife had acted in concert with others, the court refused to apply the *Simpson* case beyond its particular facts and declined to dismiss the husband's action. The court observed:

> While Congress apparently did not intend to provide a Federal remedy for persons aggrieved by the personal acts of their spouses committed within the marital home, the Court is unable to conclude as a matter of law that the gross invasion of an individual's privacy by private detective agencies, law firms and other unknown persons, whether instigated by a spouse or not, is not included within the statutory proscription. [*Id.* at 901.]

Wiretapping is a "dirty business." *Olmstead v. United States*, 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944, 952, 953 (Holmes, J., dissenting). In the instant case the wiretap intercepted and recorded Duane White's conversations with his business associates, his attorney, and the Internal Revenue Service as well as his conversations with Ms. Longo.

The Congress has permitted wiretapping for only limited purposes and otherwise has sought to protect the individual's privacy from electronic interceptions. We find no sound rationale or legal basis in the statute or in its legislative history to insulate a private detective from the reach of the civil penalties contained in the statute. The clear statutory language mandates a result other than that asserted by appellants Weiss and the Midwest Bureau of Investigation.

II. *Whether Detective Weiss Intercepted Appellant's Telephone Conversations Within the Meaning of § 2520.*

In their, brief, appellants Weiss and Midwest contend that their conduct does not fall within the language of the statute because Joan White, not defendant Weiss, allegedly "personally hooked up the equipment, monitored the recording of telephone communications, changed the tapes on the sound recorder, and delivered tapes containing all such telephone communications to [her attorney]." The appellees also assert that the telephone sound recording tapes were rerecorded into cassette tapes, presumably at the instruction and under the direction of Mrs. White's attorney. Appellees deny monitoring any telephone conversations personally and deny any knowledge of disposition of the sound recorded tapes, although they admit that some recordings had been played to them by Mrs. White's attorney. Significantly, however, the defendants concede and the district court found that Weiss personally directed Mrs. White's actual hookup of the electronic equipment.

The conversations of Duane White and Colleen Longo were in fact intercepted, disclosed, and used. That interception was made possible by the conduct of Weiss in both furnishing the equipment and directly supervising its installation. There would seem to be little question that Weiss knew that Mrs. White intended to wiretap her husband's conversations in a domestic relations controversy.

The district court indicated that the language of Title III "reaches the facts of this case." We construe this sentence to constitute a finding that the conduct of private detective Weiss fell within the interception language of the Act.[4] We agree. Weiss affirmatively participated in the interception by bringing the electronic equipment into the White home and instructing Mrs. White on how to install the equipment to record her husband's telephone conversations.

III. *Summary.*

In summary, we hold: (1) The conduct of a private detective participating in the in-

---

4. The term "intercept" in Title III means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device. [18 U.S.C. § 2510(4).]

stallation of electronic equipment to wiretap a telephone in the home in connection with a domestic relations controversy falls within the purview of § 2520. (2) The conduct of a private detective who personally instructs and supervises an individual in the installation and connection of wiretapping equipment for the purpose of intercepting telephone communications falls within the purview of the Act.[5]

Accordingly, we reverse the district court and remand for further proceedings.

**5.** We emphasize that Weiss did more than act as a mere supplier of wiretap equipment. He entered the White dwelling and knowingly provided wiretap equipment and personally supervised its installation to the telephone line. Detective Weiss knew that the electronic equipment would then automatically record telephone conversations made on the extension telephone in Duane White's basement apartment in the White home.