**Margie NATIONS, Plaintiff,**

v.

**Horace O. NATIONS, Defendant.**

**Civ. No. 87–5102.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 9, 1987.

W.H. Taylor and Jenniffer Morris Horan of Mashburn & Taylor, Fayetteville, Ark., for plaintiff.

David R. Matthews of Matthews, Campbell & Rhoads, Lowell, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a civil action brought pursuant to section 2520 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "Title III" or "the Act") which provides:

> any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520. The plaintiff is Margie Nations, a citizen and resident of Benton County, Arkansas. The defendant is Mrs. Nations' husband, Horace O. Nations, who is also a citizen and resident of Benton County, Arkansas. The court has jurisdiction of the matter by virtue of the federal question presented. 28 U.S.C. § 1331.

The facts appearing in the record to date are as follows: Mr. and Mrs. Nations were married in 1974. Presumably, marital discord was apparent as early as 1985 when Mrs. Nations alleges Mr. Nations placed a recording device on the telephone at the parties' marital residence. According to Mrs. Nations, the wiretap recorded all incoming and outgoing calls until approximately January of 1987, without her knowledge or consent. The couple separated in April of 1987, and Mrs. Nations filed for divorce on May 12, 1987, in Benton County Chancery Court. The divorce action is currently pending in that court as Case No. E 87–539–2.

On August 18, 1987, Mrs. Nations filed a complaint in this court alleging Mr. Nations "caused an electric recording device to be installed on Plaintiff's phone, from which device Defendant took tape recordings of conversations between Plaintiff and certain third-parties without their permission or knowledge." In addition, plaintiff alleges:

> that the Defendant has made known to his attorney the contents of said recordings; that he may have played the recordings for other persons; and that Defendant and his attorney have indicated their intent to utilize the recordings in a divorce proceeding which is now pending between Margie Nations and Horace O. Nations; namely, Benton County Chancery No. E 87–539–2.

For relief, plaintiff prays for an injunction prohibiting use of the tapes or transcripts thereof in the divorce proceeding in addition to actual and punitive damages.

At the same time this lawsuit was initiated, plaintiff filed a motion for impoundment of tape recordings. Defendant responded to the motion on September 4, 1987, and also filed a motion to dismiss. Plaintiff declined to respond to defendant's motion for dismissal.

The court has considered the arguments of the parties and believes, for the reasons set forth below, that both the motion to dismiss and the motion for impoundment of tape recordings should be denied.

Initially, the defendant requests dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a cause of action upon which relief can be granted. Mrs. Nations filed suit under section 2520 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Specifically, Mrs. Nations

claims that her husband violated section 2511 of Title III by recording her personal telephone conversations within their marital home through the use of a phone tap recording device. Similar husband-wife scenarios have occupied federal courts since the inception of the Act with varying conclusions as to the intent of Congress to include interspousal wiretapping in domestic relations conflicts within the conduct prohibited by Title III. *See* 55 A.L.R.Fed. 936 (1981).

The seminal opinion on the question is *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974), where the court of appeals held that the interception by a husband using electronic equipment of the conversations of his wife with a third party over the telephone in the marital home is not prohibited conduct under the Act. After a detailed analysis of the legislative history of the Act, the panel concluded that even though the "naked language of Title III, by virtue of its inclusiveness, reaches this case ... Congress did not intend such a far-reaching result, one extending into areas normally left to the states, those of the marital home and domestic conflicts." *Id.* at 805. Several times within its opinion, the court of appeals recognized the difficulty of the question presented for its review. For example, the panel affirmed the district court's dismissal "although the language and legislative history of the Act leaves the question in considerable doubt," and Judge Bell limited the opinion to the specific facts of the case with the following preface: "As should be obvious from the foregoing, we are not without doubts about our decision." *Id.* at 804, 810. Of one thing the court of appeals was certain, and that was the distinction between interspousal wiretapping and the situation where one spouse arranges for a third party to place the recording device within the marital home. The latter "is an offense against a spouse's privacy of a much greater magnitude than is personal surveillance by the other spouse." *Id.* at 809.

This distinction was examined and rejected two years later in a criminal prosecution under section 2511 of the Act. *United*

*States v. Jones*, 542 F.2d 661 (6th Cir.1976). The Sixth Circuit reasoned that:

[F]or purposes of federal wiretap law, it makes no difference whether a wiretap is placed on a telephone by a spouse or by a private detective in that spouse's employ. The end result is the same—the privacy of the unconsenting parties to the intercepted conversation has been invaded. It is important to recognize that it is not just the privacy of the targeted spouse which is being violated but that of the other party to the conversation as well.

*Id.* at 670. The court in *Jones* declared the conclusion drawn by the Fifth Circuit in *Simpson* to be "untenable because it contradicts both the explicit language of the statute and the clear intent of Congress expressed in the Act's legislative history." 542 F.2d at 667. Five pages of the *Jones* opinion are dedicated to quotations from the legislative history of Title III evidencing Congress' intent to establish an "across-the-board prohibition on all unauthorized electronic surveillance." *Id.* at 668. In addition, there is no doubt, as the legislative history conclusively demonstrates, that Congress was aware of the use of surveillance techniques in the preparation of domestic relations cases. The author of Title III, Professor Robert Blakey, testified before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee that "private bugging in this country can be divided into two broad categories, commercial espionage and marital litigation." *United States v. Jones*, 542 F.2d at 669. During the hearings, the subcommittee heard testimony from various sources including a district attorney who stated:

it is routine procedure in marital disagreements and other civil disputes for private detective agencies, generally with full knowledge of the lawyers, to tap telephones.

*Id.* at 668 n. 12. The *Simpson* court discounted the importance of these statements and many others in the same vein because the court distinguished between unaided surveillance by a spouse and surveillance by a third party, even if instigated by the spouse. This court agrees with the Sixth

Circuit, as noted above, that this is a classic "distinction without a difference." *Id.* at 670.

In addition to further review of the legislative history of Title III, *Jones* renounced the applicability of *Simpson* to that case because it was a criminal matter and the *Simpson* court's desire to "avoid a conflict between the civil remedies granted by the federal statute and the doctrine of interspousal immunity" was simply not a factor. Such a concern is not a factor in the Nations' dispute either, though for an entirely different reason. As the court in *Jones* noted, "state law is far from uniform on the doctrine of interspousal immunity." *Id.* at 672. Therefore, the controlling Arkansas precedent on the issue becomes an important consideration. It is well settled in this state that "[a] spouse may maintain a tort action against his or her spouse." *Gorchik v. Gorchik,* 10 Ark.App. 331, 336, 663 S.W.2d 941 (1984). *See also Spitzer v. Barnhill,* 237 Ark. 525, 374 S.W.2d 811 (1964), and *Leach v. Leach,* 227 Ark. 599, 300 S.W.2d 15 (1957). This being the case, the federalism concerns of the *Simpson* court are, for the most part, irrelevant.

The court now turns to the circuit court opinions written in the wake of the opposing views of *Simpson* and *Jones.* The Second Circuit Court of Appeals defined the issue of whether the Act applies to interspousal wiretapping as follows: "[A]t what point [does] interspousal wiretapping leave the province of mere marital disputes, a matter left to the states, and rise to the level of criminal conduct proscribed by the federal wiretap statutes." *Anonymous v. Anonymous,* 558 F.2d 677 (2d Cir.1977). In *Anonymous,* a divorced wife brought an action against her former husband to recover damages on the basis of her husband's alleged violation of federal wiretap statutes in recording the wife's telephone conversations with her eight year old daughter, who was in the husband's custody. *Id.* at 677. The court found these facts to present a purely domestic conflict—a dispute between a wife and her ex-husband over custody of their child—a matter to be handled by the state courts. The Second Circuit panel distinguished this

fact situation from one where the defendant spouse intercepts *all* incoming and outgoing calls made on the other spouse's telephone. *Id.* at 679. The latter involves an invasion of the privacy of innumerable persons, known and unknown, and removes the scenario from the province of a mere domestic conflict. *Id.* at 679.

Although Mr. Nations contends the facts in *Anonymous* are identical to those presented in this case, the court does not agree. The conduct of Mr. Nations is more closely analogous to the second fact situation discussed in the *Anonymous* opinion where the defendant spouse intercepts not only the conversations of the estranged spouse but also all incoming or outgoing calls on the tapped extension. The Second Circuit clearly indicated in *Anonymous* that this scenario goes beyond a mere domestic conflict and reaches the level of conduct intended to be prohibited by the Act. *Id.* at 679. In fact, this was precisely the situation presented to the Second Circuit in 1983 and the court followed the distinction set forth in *Anonymous* allowing the case to go to the jury. *Citron v. Citron,* 722 F.2d 14 (2d Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984), (case ultimately dismissed for failure to prove wife acted "willfully" within the meaning of the Act). In *Citron,* the wife placed a recording device on the telephone in the marital home to record her husband's phone calls to gain information for her use in a divorce proceeding she planned to file. Like Mr. Nations, Mrs. Citron intercepted all incoming and outgoing calls invading the privacy of not only her spouse but countless other individuals as well. Thus, the Second Circuit allows a spouse to seek civil relief under section 2520 for interspousal wiretapping on facts truly identical to those presented by the dispute between Mr. and Mrs. Nations.

The Fourth Circuit Court of Appeals joins the Second and Sixth Circuits in extending the prohibitions of Title III to interspousal wiretapping in a domestic relations context. In *Pritchard v. Pritchard,* 732 F.2d 372 (4th Cir.1984), the court examined

both *Simpson, supra,* and *Jones, supra,* and concluded:

> Although we agree with *Simpson* to the extent that it stands for the narrow proposition that state and not federal courts are better suited to handle domestic conflicts [citation omitted], we find that Title III prohibits all wiretapping activities unless specifically excepted. There is no express exception for instances of willful, unconsented to electronic surveillance between spouses. Nor is there any indication in the statutory language or in the legislative history that Congress intended to imply an exception to facts involving interspousal wiretapping.

732 F.2d at 374. The *Pritchard* opinion followed *Jones, supra,* in recognizing congressional awareness of wiretapping in domestic relations matters. At page 374 of its opinion the court noted a comment made by Senator Long, the Chairman of the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, "that the three major areas in which private electronic surveillance was widespread were '(1) industrial, (2) divorce cases, and (3) politics.'"

While the Eighth Circuit has not been faced with the precise circumstances now before the court, it has dealt with wiretap surveillance by a private detective in the marital home at the instigation of one spouse. *White v. Weiss,* 535 F.2d 1067 (8th Cir.1976). In that case, Joan White arranged for a private detective to install "bugging" equipment in the marital home for the purpose of intercepting her husband's telephone conversations. The Nebraska district court, relying on *Simpson, supra,* found that section 2520 was not intended to regulate the use of communication interception equipment by one spouse against the other within the marital home in connection with domestic relations conflicts. The court of appeals reversed on the narrow ground that the conduct of a private detective participating in the installation of electronic equipment to wiretap a telephone in connection with a domestic relations controversy falls squarely within the purview of section 2520. *Id.* at 1071–72. Although the *White* opinion does not speculate on whether the Act reaches interspousal wiretapping when a third party is not involved, the court of appeals displayed no hesitation in applying section 2520 to a domestic dispute.

■ The court believes the Eighth Circuit would join the Second, Fourth and Sixth Circuit opinions which have found that "Congress was not unaware of the growing incidence of interspousal wiretaps, and did not intend to blanketly except them from the Act's coverage." *Anonymous, supra,* at 677. Therefore, based on the foregoing, the court finds plaintiff's complaint states a cause of action under section 2520 and her allegations of interspousal wiretapping in violation of Title III will be allowed to proceed.

■ Defendant contends that even if a cause of action for interspousal wiretapping may be brought under section 2520, plaintiff's complaint should be dismissed because the requisite criminal intent or willful violation of the law has not been alleged. In *Citron v. Citron, supra,* the court stated: "To be civilly liable under § 2520, therefore, a defendant must have violated § 2511." 722 F.2d at 26. Section 2511 provides:

> [A]ny person who—
>
> (a) *willfully* intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication ... [shall be guilty of a crime].

18 U.S.C. § 2511 (emphasis added). This means that plaintiff must allege her husband acted "willfully" in order to impose civil liability upon him under section 2520. "The word 'willfully' generally denotes either an intentional violation or a reckless disregard of a known legal duty." *Citron, supra,* at 16. While plaintiff's complaint does not specifically contend that Mr. Nations acted "willfully," it does allege that defendant played the contents of the tapes for persons other than his attorney. [Plaintiff's Complaint at ¶ 4]. The need for other persons to hear the tapes is at best questionable and gives rise to a question of fact about defendant's motives. *See*

*Flynn v. Flynn,* 560 F.Supp. 922 (N.D.Ohio 1983).

A Rule 12(b)(6) motion is to be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bennett v. Berg,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In addition, all facts pled in the complaint are to be taken as true for 12(b)(6) purposes, *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976), and all reasonable inferences from facts pled in the complaint are to be drawn and deemed to be true. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1363 (1970). With these guidelines in mind, the court believes that there is a possibility that plaintiff can prove a set of facts sufficient to create a jury question as to whether Mr. Nations acted intentionally or in reckless disregard of his legal obligations and, thus, the complaint must be allowed to stand. The motion to dismiss for failure to state a cause of action upon which relief can be granted will be denied.

■ As an alternative ground for dismissal, defendant alleges that plaintiff failed to join parties indispensable to the dispute. Specifically, defendant believes that he will be prejudiced by the danger of multiple litigation if every person who spoke with Mrs. Nations on the phone while the wiretap was in place is not joined in this lawsuit.

Rule 19 of the Federal Rules of Civil Procedure governs joinder of indispensable parties and provides in pertinent part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action may ... (i) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). The burden is on the defendant to show that the persons not joined are needed for a just adjudication of the dispute between the Nations. 7 Wright & Miller, *Federal Practice and Procedure* § 1604 at 129. For the reasons set forth below, the court believes defendant has failed to meet this burden.

First, defendant has not set forth any facts, speculative or known, to indicate that the persons he believes to be indispensable are subject to service of process. With the relative ease of long distance, it is entirely possible that many of Mrs. Nations' telephone conversations were with persons outside the state of Arkansas who would not be subject to service. Second, the court has not been apprised of any person, other than plaintiff herself, who claims an interest in seeking damages from Mr. Nations as a result of his interception of phone calls to and from his wife. Indeed, the majority of these people could probably care less whether Mr. Nations listened to their sales pitches or survey questions or other impersonal conversations. Finally, the court simply does not believe that it is anything more than surmise and conjecture that failure to join these other individuals will subject Mr. Nations to multiple liability. Clearly, it is Mrs. Nations who will suffer the greatest harm from the activities of her husband and it is this lawsuit which will subject Mr. Nations to his greatest chance of incurring liability for damages. The key to succeeding under the "multiple liability" theory is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19 criteria. 7 Wright & Miller, *Federal Practice and Procedure* § 1604 at 62.

When joinder of someone described in Rule 19(a) is not feasible, as in this case, the court must examine the considerations described in Rule 19(b) to determine whether the action may go forward in the absence of the alleged indispensable parties. The court believes, for the reasons discussed in connection with the Rule 19(a)

analysis, that neither plaintiff nor defendant will be prejudiced by allowing this lawsuit to proceed in its present status. In addition, adequate relief can be awarded to Mrs. Nations in the absence of the parties sought to be joined. Thus, consideration of the subsection (b) factors in Rule 19 convince the court that the individuals sought to be joined by defendant are not indispensable parties. The motion to dismiss for failure to join indispensable parties will be denied.

■ Since the resolution of the motion to dismiss renders this a viable lawsuit, the court must consider plaintiff's motion for impoundment of tape recordings. Plaintiff, in her motion, contends that:

> An examination of the plain language of the applicable statutes reveals that such recordings should be impounded and any information derived therefrom should be suppressed at the forthcoming divorce hearing, pursuant to 18 U.S.C. § 2515.

[Plaintiff's Brief in Support of Motion for Impoundment of Tape Recordings at 1]. Section 2515 of Title III provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or before any court ... if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515. The legislative history of Title III states that the exclusionary rule of section 2515 was meant to apply in both federal and state proceedings, and was not meant to be limited to criminal proceedings. 1968 U.S.Code Cong. and Admin.News 2112 at 2185. Therefore, if the tapes were offered as evidence in the pending matter before this court, an evidentiary ruling would have to be made. But that is not the case. Here, plaintiff, in effect, requests this court to make an evidentiary ruling on the admissibility of the tapes in the state court divorce proceeding in which she is a party. To grant the relief requested by plaintiff (impoundment of the tapes) would require this court to hold that tapes prepared by interspousal wiretapping could not be used for any purpose in a divorce proceeding at the state court level. Such a

position is clearly contrary to both federal and state case law. For example, several courts have recognized that tape recordings secured in violation of Title III can be used for impeachment purposes. *U.S. v. Caron*, 474 F.2d 506 (5th Cir.1973); *Jacks v. Duckworth*, 486 F.Supp. 1366 (N.D.Ind. 1980); *Jacks v. State*, 271 Ind. 611, 394 N.E.2d 166 (1979); *Sikes v. Segers*, 266 Ark. 654, 587 S.W.2d 554 (1979). In addition, unlawfully prepared tapes have been admitted in a divorce action where it was alleged the tapes were used to coerce or blackmail a party into a court-approved agreement, thereby also defrauding the court. *In re Marriage of Lopp*, 268 Ind. 690, 378 N.E.2d 414 (1978), *cert. denied*, *Lopp v. Lopp*, 439 U.S. 1116, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979). Therefore, depending on the circumstances of the divorce proceeding, the tapes prepared by Mr. Nations might be admissible and a prior ruling by this court on the issue would be manifestly unjust. Moreover, the state court is in a far superior position to determine the extent to which the tape recordings should or should not be admitted in the Nations' divorce trial and this court declines to usurp the authority of the states to handle domestic relations matters. The motion for impoundment will be denied.

A separate order in accordance herewith will be concurrently entered.